## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHERMAN DUNNING** | ) | |
| **BOP Reg. # 14336-003,** | ) | |
| **Movant,** | ) | |
| | ) | **CIVIL ACTION NO. 17-00174-WS** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 15-00174-WS-N** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATIONS

Sherman Dunning, a federal prisoner proceeding through retained counsel, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 44[1]). The Court has referred the petition to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* S.D. Ala. GenLR 72(b); (4/27/2017 electronic referral).

As ordered under Rule 4(b) of the Rules Governing Section 2255 Proceedings (*see* Doc. 45), the Government has timely filed a response (Doc. 48) in opposition to Dunning's § 2255 motion, and Dunning has timely filed a reply (Doc. 49) to the response. The motion is now under submission for determination of whether

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

expansion of the record and/ or an evidentiary hearing is warranted.  *See* (Doc. 45 at 2); Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is not warranted and that Dunning's § 2255 motion (Doc. 44) is due be **DENIED** and **DISMISSED with prejudice**.

## I.     *Background*

On July 30, 2015, the grand jury for this judicial district issued a 4-count indictment against Dunning alleging various drug crimes. (Doc. 14).  On September 28, 2015, Dunning, represented by appointed counsel and pursuant to a written plea agreement, pled guilty to Count 4 of the indictment, alleging an offense of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (*See* Docs. 23, 29).  Prior to sentencing, the Government filed a motion for downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines, requesting that Dunning's sentence "be reduced by (25%) twenty-five percent from the low end of [his] sentencing guidelines." (Doc. 39).  On April 11, 2016, the Court, after granting the Government's motion for downward departure (*see* Doc. 40), sentenced Dunning to 75 months of imprisonment, to be followed by 5 years of supervised release, and an assessment of $100.  (*See* Doc. 41).  The remaining counts of the indictment were dismissed on motion of the Government,

and written judgment was entered April 13, 2016. (*See id.*). Dunning took no direct appeal. Through new, retained counsel, Dunning filed the present § 2255 motion (Doc. 44) on April 24, 2017.

## II.   *Legal Standards*

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."

*Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

The "'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'" (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)). Stated differently, "a voluntary and

intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Therefore, when, as here, a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

### III.   *Analysis*

### A. Grounds for Relief

Dunning alleges four separate but related grounds for relief under § 2255.  In brief, Dunning alleges that the evidence underlying the charges in the indictment was discovered through execution of a search warrant that was "fatally defective,…illegal and invalid[,]" thus violating Dunning's right against unreasonable search and seizure under the United States Constitution.  Dunning further alleges that his trial counsel failed to obtain the search warrant during discovery.  Had counsel done so and reviewed the warrant, Dunning claims, counsel would have discovered it was defective, and accordingly would have filed a likely successful motion to suppress the evidence seized.  Dunning further alleges that had he "known of the potential issues of suppression and the search warrant affidavit and warrant he would not have entered his plea of guilty prior to having the issue of suppression heard by the court."  Accordingly, Dunning also alleges that his trial counsel provided unconstitutionally ineffective assistance.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).  "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."  *Id.* at 504.  *See also United States v.*

*Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014. "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

"'Conclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland*

test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt v. Titlow*, 134 S. Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors

"actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel…" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "[C]ounsel is not ineffective for failing to file a meritless suppression motion." *Curbelo*, 726 F.3d at 1267 (citing *Jefferson v. Fountain*, 382 F.3d 1286, 1297 (11th Cir. 2004)). However, "[a] failure to file a motion to suppress that is based on a lack of knowledge of the state of the evidence due to counsel's misunderstanding or ignorance of the law or failure to conduct adequate investigations can satisfy *Strickland*'s deficiency prong." *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010) (citing *Kimmelman*, 477 U.S. at 383-87). "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable

evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (per

curiam) (citing *Kimmelman*, 477 U.S. at 375). *See also Green*, 595 F.3d at 1251-52

("To establish prejudice in the context of ineffective assistance of counsel for failure

to raise a Fourth Amendment claim, a defendant must show that (1) the underlying

Fourth Amendment issue has merit and (2) there is a 'reasonable probability that

the verdict would have been different absent the excludable evidence....' " (quoting

*Kimmelman*, 477 at 375)).

> The reasonableness of counsel's performance is to be evaluated from
> counsel's perspective at the time of the alleged error and in light of all
> the circumstances. In making the competency determination, the court
> should keep in mind that counsel's function, as elaborated in
> prevailing professional norms, is to make the adversarial testing
> process work in the particular case. Because that testing process
> generally will not function properly unless defense counsel has done
> some investigation into the prosecution's case and into various defense
> strategies,…counsel has a duty to make reasonable investigations or to
> make a reasonable decision that makes particular investigations
> unnecessary. But…a particular decision not to investigate must be
> directly assessed for reasonableness in all the circumstances, applying
> a heavy measure of deference to counsel's judgments.

*Kimmelman*, 477 U.S. at 384 (citing *Strickland*, 466 U.S. at 689-91) (citations and

quotations omitted).

> "A guilty plea is open to attack on the ground that counsel did not
> provide the defendant with 'reasonably competent advice.' " *Cuyler v.*
> *Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333
> (1980) (quoting *McMann*[ *v. Richardson*], 397 U.S. [759,] 770, 90 S. Ct.
> [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part
> *Strickland v. Washington* test applies to challenges to guilty pleas
> based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S.
> 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*,
> 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v.*
> *United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v.*
> *Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)…

...

...*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.[2]

---

2 *Hill* continued:

> Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449;

---

affirmative defense likely would have succeeded at trial. *See, e.g.*, *Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As []explained in *Strickland v. Washington*, []these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.,* 466 U.S., at 695, 104 S. Ct., at 2068.

474 U.S. at 59-60.

*Long*, 883 F.2d at 969.

> The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted).  *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'  *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.'  Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'  *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066.  *Hill* modified the second part of the *Strickland* test in the

context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370."). In claiming prejudice under *Strickland* and *Hill*, "[a] movant must [also] allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.'" *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

*United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

The affidavit submitted in support of the subject search warrant, attached by the Government to its response, states in relevant part as follows:

> I am Sergeant Larry Toland; I am employed by the Mobile Police Department and have been since March of 2001. I am currently assigned to the Mobile County Street Enforcement Narcotics Team [sic] have been since October of 2013...I have conducted an investigation into drug activity taking place at **2766 Brookwood Dr. Mobile, AL 36606**

> Within the past 72 hours, Detective Patrick Sanders, and I met with a Confidential Informant (CI) of the Mobile Police Department who within the past six months has provided information to me concerning distribution of high quality methamphetamine known as "ice" in the Mobile area.

The CI advised me that he/she could purchase methamphetamine from [sic] black male known as "Squirt" or "Jerry" who he/she would meet at the Mcdonald's parking lot located at 2698 Government Blvd.

The CI, Detective Sanders, and I met at a predetermined location. I checked the CI's person and vehicle for contraband and money and found none. I then handed the CI the prerecorded money for the controlled buy. Detective Sanders and I then observed the CI as he/she drove to 720 Raines Drive to meet Dylan Giles who would facilitate the transaction. Detective Sanders and I then observed the CI and Dylan Giles leave 720 Raines Drive and drive to 2698 Government Blvd. Once there, the CI and [sic] parked and waited for about forty five minutes for "Squirt" to arrive. Once that time had passed, a yellow Camaro (AL tag # 182ASC) pulled alongside the CI's vehicle. When the yellow Camaro arrived, the CI alerted me by text message that this was Squirt's vehicle. Shortly thereafter, a hand to hand transaction occurred between the sole occupant of the yellow Camaro and Dylan Giles. The occupant of the Camaro then repeated the hand to hand transaction with another vehicle that parked on the other side of his Camaro.

Police then followed the Camaro to the address listed in section one of the affidavit where the occupant entered and remained in the residence. The occupant was determined through investigative means to be Sherman Lejeffery Dunning who resides at **2766 Brookwood Dr. Mobile, AL 36606.**  Sherman Dunning's identity was confirmed by the CI as well as Lt. Karl Reed who observed the transaction from inside the McDonald's at 2698 Government Blvd.

I then met with the CI at a predetermined location where he/she handed me a solid piece of crystal substance (identified as methamphetamine). The CI stated that he/she parked at the Mcdonald's and waited for "Squirt". One [sic] "Squirt" arrived, he/she handed the prerecorded currency to Dylan Giles who, while he/she watched, exchanged it with "Squirt" for methamphetamine which Dylan then handed to her. The CI then left and met officers at the predetermined location. Prior to leaving the predetermined location I searched the CI's person and the CI's vehicle for illegal contraband and US currency and none was found. I later conducted a field test on the

substance and it tested positive for methamphetamine. I then secured the evidence for testing and storage according to appropriate policies.

The CI has conducted controlled purchases of methamphetamine previously from the same subject (Sherman Dunning) under identical circumstances during which he drove a blue Chevy Pickup (Al tag # 2AK2791) which also resides at the address listed in section one of the affidavit.

Based upon these facts and information; I respectfully request that a Search Warrant be granted for **2766 Brookwood Dr. Mobile, AL 36606**

(Doc. 48-1).   The affidavit also included a description of the Brookwood Drive residence and identified the prerecorded money used in the controlled buy as the property to be seized.   (*Id.* at 1).   The affidavit was sworn to by Sergeant Toland and signed by a district judge of Mobile County, Alabama, on March 12, 2015.

Dunning claims that the search warrant, executed on his home on March 20, 2015, was "illegal and invalid, and not supported by probable cause[,]" based on the following grounds:

1. "The search warrant affidavit did not contain sufficient information regarding the veracity and basis of knowledge of the confidential informant." (Doc. 44 at 5).

2. "The information in the search warrant affidavit was not timely so as to support probable cause. The affidavit provides no basis whatsoever for a detached and neutral judicial officer to determine the timeliness of the information in the affidavit as to allow the judicial officer to formulate their own independant [sic] and detached judgment of probable cause…The search

warrant affidavit does not provide any temporal benchmarks as to when or where the events related in the affidavit occurred in relation to the application for the search warrant. As a result, the judicial officer was required to either speculate as to the timing or simply rubber stamp the unsupported assertions of officer requesting the warrant." (*Id.*).

3. "There was not sufficient evidence of a nexus or connection, either in time, place, or subject matter, between the Petitioner, the residence on Brookwood Drive, and the activities alleged in the search warrant affidavit…The search warrant and search warrant affidavit supplies no factual basis to conclude that there was a fair probability that the items sought by the search warrant would be found at the location searched."

(Doc. 44 at 4 – 5).

"Every affidavit and every set of circumstances leading up to a warrant is unique, and therefore, each affidavit underlying a search warrant should be examined thoroughly for probable cause (or an unreasonable lack of it) on a case-by-case basis. Every warrant must be evaluated to determine what facts are included and what critical information has been left out." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *United States v. Brundidge,* 170 F.3d 1350, 1352 (11th Cir. 1999). Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for

concluding that Defendant might keep evidence of his crimes at his home, i.e., a "safe yet accessible place." *United States v. Feliz,* 182 F.3d 82, 87–88 (1st Cir. 1999).

With regard to a suspect's home:

> The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

*United States v. Green,* 634 F.2d 222, 226 (5th Cir. Unit B Jan. 1981). There need not be an allegation that the illegal activity occurred at the location to be searched, for example the home, but "the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin,* 297 F.3d 1308, 1314 (11th Cir. 2002); *see United States v. Anton,* 546 F.3d 1355, 1358 (11th Cir. 2008) (evidence of possession of contraband of type normally expected to be hidden in residence will support search); *United States v. Jenkins,* 901 F.2d 1075, 1080–81 (11th Cir. 1990) (nexus between items to be seized and defendant's home can be established circumstantially where contraband is capable of being hidden in residence). *But see Green,* 634 F.2d at 226 (convenience of defendant's residence "for use as a place to plan and hide fruits of the crime [was] thus diminished, if not eliminated" where alleged obstruction of justice, suborning of perjury, and violations of citizen's civil rights took place thousands of miles from home in absence of other evidence linking residence and the criminal activity).

*United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009). "The information in the affidavit must also be fresh." *Martin,* 297 F.3d at 1314 (citing *United States v. Zimmerman,* 277 F.3d 426, 437 (3d Cir. 2002) as holding: "Information indicating that [contraband] had been located on a computer in the home six months before the

search was 'stale,' and there was nothing that transpired during that time period that would suggest that a 'hurried judgment' was made to seek the warrant, which would have excused any reasonable mistake."). "If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's 'veracity' and 'basis of knowledge.' " *Id.* (quoting *Gates,* 462 U.S. at 238). "However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id.* (quotation omitted). "Affidavits supporting warrants are presumptively valid." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) (per curiam) (citing *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011)).

However, suppression of evidence seized is not guaranteed even if a search warrant is ultimately found to be deficient under the Fourth Amendment.

> The exclusionary rule, as it is known, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). One exception to that exclusionary rule is the *Leon* good faith exception.
>
> *United States v. Leon,* 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923, 104 S. Ct. 3405. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S. Ct.

2319, 60 L. Ed. 2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

The *Leon* good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S. Ct. 3405. The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in "objectively reasonable law enforcement activity" and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies. *Id.* at 919–20, 104 S. Ct. 3405.

*Martin*, 297 F.3d at 1312–13. "Under *Leon*, the magistrate judge's determination of probable cause is not the issue, but rather whether the officers executing the warrant relied on that determination in good faith." *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998) (citing *Leon*, 468 U.S. at 909).

Assuming without deciding that the subject warrant affidavit does not pass Fourth Amendment muster in some respect, the undersigned concludes that the record plainly shows the *Leon* exception would have applied to foreclose suppression. In claiming that *Leon* should not apply in this case, Dunning relies only on the argument that the subject warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Doc. 49 at 5). The undersigned disagrees. The affidavit describes in sufficient detail a controlled buy, observed by both the confidential informant and law enforcement

officers, which resulted in the informant and another individual exchanging prerecorded money with the sole occupant of a yellow Camaro (later confirmed to be Dunning by both the informant and an observing officer), and in the informant coming away with methamphetamine. The affidavit further states that, following this transaction, officers followed the yellow Camaro to the Brookwood Drive residence, where the occupant "entered and remained." Thus, there was, at the very least, sufficient indicia that the prerecorded money, the property to be seized under the warrant, was used in a drug transaction involving an occupant of the Brookwood Drive residence, and that the money would be found therein.

As for the timeliness of the information, Dunning claims that the affidavit "does not say that the controlled buy occurred in the last 72 hours" and instead offers "only a disjointed group of anecdotal statements for which it does not provide any cohesive timeline" (Doc. 49 at 4). While the affidavit is not a model of clarity in this regard, the natural flow of the affidavit's narrative indicates that Sergeant Toland and a detective met with the informant "[w]ithin the past 72 hours" prior to the execution of the affidavit, with all subsequently-described events occurring after that meeting. At the very least, a reasonable officer could have attributed this timeline to the narrative from the face of the affidavit. To the extent Dunning insinuates that the controlled buy described in the affidavit occurred sometime before Sergeant Toland says he met with the informant, but that Toland drafted his affidavit to mislead the issuing judge into believing that the buy occurred following

that meeting, Dunning offers no evidence or specific factual allegations to support this vague suspicion.[3]

Dunning also fails to cite any federal authority in support of his position that the affidavit does not qualify for the *Leon* exception.[4]   Instead, he argues that, because the warrant was "issued by a state court judge to state law enforcement[,]" with "no federal involvement in obtaining the search warrant or in executing the search warrant[,] the good faith of the executing officer should be determined in this

---

[3] Such a vague, unsupported suspicion would likely not have warranted a *Franks* evidentiary hearing even if raised prior to Dunning's guilty plea.  *See United States v. Hyatt*, 383 F. App'x 900, 905 (11th Cir. 2010) (per curiam) (unpublished) ("A defendant may…challenge an affidavit on the basis that the affiant made a materially false statement or omission. *See* [*Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L. Ed. 2d 667 (1978)].  In order to obtain an evidentiary hearing regarding the veracity of the affiant's statement, the defendant must make a 'substantial preliminary showing' that the affiant made the false statement or omission 'either intentionally or with reckless disregard for the truth.' *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). 'The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.' *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. The defendant should specifically point out the false statements or omissions, explain why the statement or omission constitutes a falsity or demonstrates a reckless disregard for the truth, and support his allegation with an affidavit or other sworn statement by a witness. *See id.*").

[4] On the other hand, the Government has cited a federal case in which a similar warrant was found to qualify for the *Leon* exception.  *See United States v. Whiddon*, 146 F. App'x 352, 355 (11th Cir. 2005) (per curiam) (unpublished) ("Here, the facts alleged within the four corners of the search warrant affidavit were sufficient to establish a connection between Whiddon, the places to be searched, and criminal activity. Specifically, in the search warrant affidavit, Officer Hughes averred, among other things, that: (1) he had received tips that suspicious activity was going on at, and a strong chemical smell emanating from, Whiddon's business; (2) a CI had drug dealings with Whiddon at the business and had firsthand knowledge that Whiddon was manufacturing methamphetamine at his home and selling the drugs at his business; and (3) the drug dealings with the CI had transpired within 72 hours of the swearing of the affidavit.  On this record, we cannot say that the information in the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (quotation omitted)).

instance based on whether he possessed a good faith belief in the validity of the search warrant based on Alabama law." (Doc. 49 at 5). He then cites three Alabama appellate decisions finding warrant affidavits purportedly similar to the one at issue here to be deficient due to failure to adequately demonstrate that the information therein was timely. In each case, the Alabama court found the warrant at issue was so lacking in indicia of the timeliness component of probable cause that the *Leon* exception did not apply.

Dunning cites no authority to support his contention that a state officer's "reasonable reliance upon a search warrant" under *Leon* must be measured by reference to state law. Generally,

> the admissibility of evidence in a federal prosecution is governed by federal law, rather than state law. *United States v. Melancon,* 462 F.2d 82, 92 (5th Cir.), *cert. denied,* 409 U.S. 1038, 93 S. Ct. 516, 34 L.Ed.2d 487 (1972). The Supreme court has stated:
>
>> In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.
>
> *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S. Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *c.f. United States v. Castillo,* 449 F.2d 1300, 1301 n.2 (5th Cir. 1971) (fact that procedure followed by law officers violated state law does not deprive the evidence of its admissibility in a federal court trial).

*United States v. Mastrangelo*, 733 F.2d 793, 799 (11th Cir. 1984). *See also United States v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991) ("In the instant case, constitutional considerations, rather than the demands of state law, direct our resolution of this issue. As the Supreme Court noted in *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S. Ct. 1437, 1447, 4 L. Ed. 2d 1669 (1960), a federal court's inquiry in search and seizure matters necessarily differs in scope from that which a state court must resolve…"); *United States v. Ramsey*, 376 F. App'x 968, 969 (11th Cir. 2010) (per curiam) (unpublished) ("Evidence is admissible so long as it was not 'obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment[.]'" (quoting *Elkins,* 364 U.S. at 223-24) (alteration added)).[5]

---

[5] *See also United States v. Walker*, 960 F.2d 409, 416 (5th Cir. 1992) ("We are aware that in *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1947), the Supreme Court reversed a federal conviction because it was based upon evidence obtained from an arrest that was illegal under state law. We agree with the Tenth Circuit's conclusion that Di Re 'was rejected, by implication,' in *Elkins v. United States*, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960): ' "The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." ' *United States v. Miller*, 452 F.2d 731, 733 (10th Cir. 1971), *cert. denied*, 407 U.S. 926, 92 S. Ct. 2466, 32 L. Ed. 2d 813 (1972) (quoting *Elkins*, 364 U.S. at 224, 80 S. Ct. at 1447)…A commentator has suggested that 'Di Re is simply an instance of the Court utilizing its supervisory power to exclude from a federal prosecution evidence obtained pursuant to an illegal but constitutional federal arrest' by a local police officer. LaFave, Search and Seizure, § 1.5(b) at 107. If that is so, *United States v. Payner*, 447 U.S. 727, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980), makes clear that the Court is no longer interested in using its supervisory power to exclude evidence obtained unlawfully but under circumstances not violative of the Fourth Amendment. A federal court should not 'use its supervisory power to suppress evidence tainted by gross illegalities that did not infringe the defendant's constitutional rights.' *Id.* at

However, assuming without deciding that state appellate court decisions are relevant to the *Leon* "good faith" inquiry,[6] none of the Alabama cases Dunning cites are so on-point as to render the executing officers' reliance on the present search warrant objectively unreasonable.  The warrant affidavits at issue in *Lewis v. State*, 589 So. 2d 758 (Ala. Crim. App. 1991), and *Nelms v. State*, 568 So.2d 384 (Ala. Crim. App. 1990), were each found to be deficient where the affiant officer stated he had met with a confidential informant "within the last seventy-two hours" who claimed to have observed narcotics within a residence, but gave no indication of when the informant had actually observed the contraband at the residence.[7]

In *Ex parte Green*, 15 So. 3d 489 (Ala. 2008), the subject affidavit stated, in relevant part, that the affiant officer had "received information from a confidential

---

733, 100 S. Ct. at 2445."). *Cf. Davis v. United States*, 564 U.S. 229 (2011) (holding that "good-faith" exception to exclusionary rule applicable to warrantless search of vehicle applied to Alabama police officers' search conducted in reliance on existing Eleventh Circuit precedent).

[6] *See Leon*, 468 U.S. at 923 n.23 ("[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, **all of the circumstances**—including whether the warrant application had previously been rejected by a different magistrate—may be considered." (emphasis added)).

[7] *See Lewis*, 589 So. 2d at 759 ("This Court in *Nelms v. State*, 568 So.2d 384 (Ala. Cr. App. 1990), found that an affidavit supporting the warrant issued for the search of Nelms' residence was deficient for failing to state when the drugs were seen by the informant at the appellant's residence. The *Nelms* affidavit stated '... that within the last seventy-two hours a confidential police informant ... stated to the affiant that they had seen crack cocaine in the residence of Tommie Lee Nelms ....' The almost identically-worded affidavit in the present case is likewise deficient, because it fails to refer to the date when the informant allegedly observed cocaine at the appellant's residence.").

informant that Jeff Green is manufacturing and selling methamphetamine inside of the residence and in the shed beside of the residence[,]" that "Dothan Swat team snipers have observed continuous foot traffic between the residence and the shed[, and] also smelled a strong acidic chemical odor coming from the property that is consistent with the manufacture of methamphetamine."  15 So. 3d 489, 490-91 (Ala. 2008).   The Alabama Supreme Court, relying on *Nelms* and *Lewis*, among other cases, determining as follows in finding the affidavit's showing of timeliness to be deficient:

> [N]othing in Officer Flathman's affidavit reveals when the tip from the informant *was received* or when the alleged activity was observed. The most that can be gained from that portion of the affidavit is that—at some indefinite time in the past—an anonymous individual allegedly learned of a methamphetamine operation involving Green at the address indicated on the search warrant. Because Officer Flathman's affidavit contained no chronological reference in which to place the informant's alleged observation of the methamphetamine operation, it afforded no basis on which to determine whether the object of the search was probably on the premises to be searched at the time the warrant was issued.
>
> The information supplied to Officer Flathman by the "Dothan SWAT team snipers" is defective for the same reasons. The affidavit provides no information as to *when the SWAT-team snipers were deployed.* It relates only what the snipers allegedly "have ... observed" and "have ... smelled" at some indefinite time in the past. Lacking a relevant time frame, the statements of the snipers provided no basis on which to determine whether a methamphetamine operation was ongoing at the residence at the time the warrant was issued. For these reasons, the affidavit fails to state facts or circumstances that would support a finding of probable cause…

*Id.* at 494–95, 497 (citation and quotation omitted).

In each of those Alabama cases, the affiant's knowledge of contraband in the place to be searched was based solely on information provided by others, with no indication of how fresh that information was relative to the execution of the affidavit. Here, by contrast, the affiant, Sergeant Toland, personally observed the controlled drug buy that connected Dunning's residence to the illicit activity. And, as explained above, while the affidavit certainly could have been clearer in explaining its timeline, a reasonable officer could have interpreted the affidavit as indicating the controlled buy occurred within the 72 hours prior to the affidavit's execution.

Because Dunning has failed to show that a motion to suppress based on the sufficiency of the search warrant was likely to succeed, he has failed to show entitlement to § 2255 relief on any of his claims.[8] Accordingly, his § 2255 motion is due to be **DENIED** and **DISMISSED with prejudice**.

## B.      Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

---

[8] Accordingly, the undersigned need not and does not address the Government's other argument that there was not a reasonable probability that Dunning would have gone to trial even had the subject evidence been suppressed.

"A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon consideration, the undersigned finds that Dunning should be **DENIED** a Certificate of Appealability as to the present § 2255 motion, as reasonable jurists would not debate whether Dunning's § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to

proceed further.[9]

## C.      Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is *860 "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

---

[9]      Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

      Should the Court adopt this recommendation and deny a certificate of appealability, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Having considered the issues raised, as set forth above, the undersigned **RECOMMENDS** the Court certify that any appeal by Dunning of the dismissal of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[10]

## IV.   *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that Dunning's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 44) be **DENIED** and **DISMISSED with prejudice**.   It is further **RECOMMENDED** that the Court find Dunning not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge

---

[10] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 20th day of February 2018.

                    */s/ Katherine P. Nelson*
                    **KATHERINE P. NELSON**
                    **UNITED STATES MAGISTRATE JUDGE**